# IN THE COURT OF APPEALS OF IOWA

No. 20-1218
Filed November 30, 2020

**IN THE INTEREST OF X.A and A.A.,**
**Minor Children,**

**S.A., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Crawford County, Mary L. Timko, Associate Juvenile Judge.

A father appeals the termination of his parental rights.  **AFFIRMED.**

Dean A. Fankhauser of Fankhauser, Farrens & Rachel, PLC, Sioux City, for appellant father.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena and Natalie Deerr, Assistant Attorneys General, for appellee State.

Lori J. Kolpin, Aurelia, attorney and guardian ad litem for minor children.

Considered by Bower, C.J., and Vaitheswaran and Greer, JJ.

**BOWER, Chief Judge.**

A father appeals the termination of his parental rights pursuant to Iowa Code section 232.116(1)(f) (2020) (allowing termination if the State shows by clear and convincing evidence a child who is four years of age or older, has been adjudicated a child in need of assistance (CINA), has been removed from the physical custody of the child's parent for at least twelve of the last eighteen months, and cannot be returned to the custody of the parent at the present). The father asserts the children can be returned to him at present and it is not in the children's best interest to terminate his parental rights. We affirm.

**I. Backgrounds Facts.**

A.A., born in January 2013, X.A., born in July 2014, and two half-siblings, one older and one younger, came to the attention of the department of human services (DHS) in June 2018 on a report their mother was using methamphetamine in the home.[1]

During the subsequent child-abuse assessment, it was learned the mother's current partner had a lengthy criminal, substance-abuse, and domestic-violence history. The mother asserted she was not using methamphetamine, though her partner was. She asked that the residence be searched and consented to a drug screen. When police searched the residence, they found no illegal substances, but a drug dog indicated drugs may have been used in the room. The three older children were not present at the time; the mother stated X.A. and A.A. were with

---

[1] The father last lived with X.A. and A.A. in 2016 when his relationship with the mother ended. There was no custodial decree and the father's visits occurred by mutual consent of the parents.

their father. The father was contacted, and he learned the children would remain in their mother's care under terms of a safety plan; the mother and children would live with the maternal grandmother. A no-contact order was in place between the mother and her partner.

On July 14—while the children were with other caregivers—the mother and her partner were involved in a car accident caused by the mother driving intentionally at a high rate of speed into a ditch. On July 16, the children were removed from the mother's custody by emergency court order. X.A., A.A., and their older sibling were placed together with a maternal aunt and uncle. The youngest, who was less than a year old and had special medical needs, was in a separate placement.

Visits between the father and his children were initially unsupervised during the weekends. On August 24, the father was asked to complete a drug test. He reported he would test positive and did not follow through with testing. When informed his visits were then to be supervised, he stated he did not want to have visits with the children if they were supervised. He did not participate in services offered by DHS.

On September 6, a hearing was held on the removal and CINA petition. On October 11, the juvenile court entered an order adjudicating the children CINA and requiring the father to cooperate with random drug and alcohol testing, participate in Family Safety, Risk, and Permanency (FSRP) services, complete a substance-abuse evaluation and follow any recommendation for treatment, complete a mental-health evaluation and follow recommendations, and sign necessary releases of information.

A dispositional hearing was held on October 18 and a dispositional order was entered on October 25. The court noted the father was not participating in services or having interactions with his children. The father "reported he does not need anyone looking over his shoulder or watching the children. He indicated he will not participate until paternity is established." The court observed:

> [The father] reports that he would test positive for marijuana. He indicates he works and doesn't have time to participate in services. [The father] openly admitted he will not stop using marijuana in order to be a placement for his children. The court asked [the father] to explain that situation. He indicated that while he is in juvenile court and on parole, he will not be using marijuana, but will likely use again once those are completed.

A review hearing was held April 4, 2019. The father did not attend "due to employment responsibilities." The court found:

> [The father] has recently reached out and requested a visit with his children, [X.A.] and [A.A.] He is unhappy that the visits are supervised at this time, but he has openly admitted in court to using illegal substances and then stopping simply to see his children. Given his lack of sincerity in addressing substance abuse issues, supervision is deemed appropriate at this time.
>      [The father] only recently began working with FSRP. In the past, when asked to complete drug testing, he has admitted that he would test positive for marijuana and did not attend testing.
>      . . . .
>      . . . [The father] needs to demonstrate his commitment to the children by making changes in his lifestyle that would be conducive to raising children.

The court confirmed the children remained CINA and again ordered the father to submit to random drug and alcohol testing and complete a mental-health evaluation and follow through with any treatment recommendations.

Later in April, the maternal aunt informed DHS she was no longer a viable placement for the older children. The mother was then in a shelter house "where there was staff present 24/7 and all visitors had to sign in and be approved" and

the mother's actions were documented. The children were returned to the mother for a trial home visit in that setting. The mother obtained housing and moved with the children.

A permanency hearing was held on September 26, at which time the court noted the mother's progress and continued the option of termination of parental rights for an additional six months.

In October, the children informed a DHS worker the mother was in a new relationship with a man and he was staying in the family apartment. When asked about the relationship, the mother admitted she had allowed the man to stay for about a week. On November 5, the man was in the apartment and threatened the mother and hit her in the children's presence. The mother's account of the events to DHS differed from a police report. On November 7, an application for emergency removal was filed and the children were removed. The mother admitted relapsing on methamphetamine. She was subsequently evicted from the apartment.

On November 14, the removal was confirmed and the older three children were placed in foster care. DHS reported the mother was in a new relationship and the man had broken into the apartment where he had been with the family.

The FSRP monthly reports mention no supervised visits between the father and the children after March 14, 2019.

On January 16, 2020, a permanency hearing was held. The father was not present but was represented by counsel. The court observed the father had no supervised visits with the children for many months after attending a few. The mother reported she had taken the children to the father's home to see him "a

couple of times over the summer." The court found the father had not "put forth any effort to place [himself] in a place of importance in the lives of [his children]" and he had abandoned them. The court ordered the filing of a petition to terminate the father's parental rights.

On January 31, 2020, the father contacted DHS to set up visits. Approval was received for visits that same day, and the father was asked to contact FSRP to set them up. FSRP said they would accommodate his work schedule for visits. Multiple attempts were made to schedule visits with the father, including cancelling visits with other clients to allow the FSRP worker to accommodate the father's work schedule, but he did not return the calls.

The coronavirus pandemic struck. The father did participate in a few virtual visits with the children but those were stopped when the children repeatedly stated they did not wish to participate.

A termination-of-parental-rights hearing was held on July 30 and August 13. The father testified he had quit smoking marijuana in January 2020, was living in a three-bedroom home with his partner and her three children, had employment, and was ready to take the children. The district court found otherwise and terminated his parental rights.

The father appeals, claiming there is not clear and convincing evidence to support the termination, and termination is not in the children's best interests in any event.

**II. Scope and Standard of Review.**

We review the termination of parental rights de novo. *In re A.S.*, 906 N.W.2d 467, 472–73 (Iowa 2018). We give weight to the juvenile court's fact findings,

especially in assessing the credibility of witnesses, but are not bound by them. *Id.* "Our primary concern is the best interests of the child[ren]." *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

## III. Discussion.

The children are over four years of age, have been adjudicated CINA, and have been removed from the father's custody for more than the statutory period. *See* Iowa Code § 232.116(1)(f)(1)–(3). The father only challenges the court's finding that the children cannot be returned to him at present. *See id.* § 232.116(1)(f)(4). He also contends terminating his parental rights is not in the children's best interests "given [his] progress and his connection with the children."

The juvenile court provided thoughtful and insightful findings, which we adopt here:

> [The father] did not participate in drug tests and did not participate in a substance abuse evaluation throughout the whole of the case. In his testimony at the termination of parental rights hearing, he said he stopped smoking marijuana in approximately January of 2020. There is absolutely no verification of that.
> [The father] did not participate in a mental health evaluation because he did not need any therapy. In his testimony at the termination hearing, [he] was reluctant to commit to allowing his children, who have been through an extensive amount of trauma, to continue with therapy because "they can just talk to me." Although he has never been available to these children to talk to, he seems to think he can walk right into their lives and have them trust him enough to work through their problems. This man who did not consistently visit his children, who chose marijuana over them, and who has provided no emotional support to them, believes that he can minister to them. Even after he was told that the children's therapist recommended continued therapy due to their trauma, he still was not willing to commit to the same. To [the father], therapy is for "psychopaths and rapists."
> . . . .
> When asked if he was asking to have [A.A.] and [X.A.] placed with him today, he answered, "Kind of yes and kind of no." [He] had no explanation as to why, when he knew that his children were

experiencing extreme things while living with [the mother], that he did not step up and do what was asked of him to get his children. He knew the children were living with a mother who had overdosed—more than once or twice. He knew his children were living in an environment of domestic violence. He knew that police were frequently called to the residence wherein his children were residing. He knew the home was filthy. He admitted that although he knew this was happening to his children, he did nothing because they weren't living with him. He knew not participating in a substance abuse evaluation was a barrier to reunification. He knew that continuing to smoke marijuana was a barrier to reunification. He knew that not being consistent in his contact with service providers since July of 2018 was a barrier to reunification. When asked about his lack of consistency in contact, he very matter-of-factly stated, "I didn't want to see [the children] here and there; an hour here, an hour there," so he chose not to see them at all. He admitted that his attitude was such that since he could not have the children in his care, he was not going to do anything.

[The father] is completely disconnected with his children. He has no insights into their feelings. He struggled with their birth dates. He did not seem to care that splitting them from their [older sibling] would affect them emotionally. He did not care that they were living in horrific conditions. He did not seem to care that his children did not want to see him or have contact with him. . . .

[These children] have never been placed in [the father's] care. He has not requested their placement throughout the case and did not agree to participate in services that would have moved him along the path of reunification. He is currently residing with a girlfriend of about three months and her three children. The home already has five individuals living there and the addition of two more would not be feasible given the limitations in the home.

In addition to space restrictions, there are no provisions for the children should they be returned today. There are no beds or supplies. . . .

Further, both he and his girlfriend work, which would necessitate the children going to childcare beginning at 4:30 a.m. He said he "thought" [A.A. and X.A.] could go to the same childcare where his girlfriend's children go. He did not know the name of the childcare provider much less ask if she would take on two additional children. These might be areas that could be corrected; however, the [DHS] has been involved in these children's lives for two years and [the father] did nothing to correct these deficiencies that whole time. [He] admitted he knew what he needed to do and just did not do it.

There is clear and convincing evidence to support termination of the father's parental rights pursuant to section 232.116(1)(f).  After two years of juvenile court proceedings and little effort on the father's part that, in any case, came too late, these children deserve permanency.  Termination is in the children's best interests. We affirm the termination of the father's parental rights.

**AFFIRMED.**